## FARMERS & MERCHANTS BANK AND TRUST COMPANY, Appellant,

v.

## DIRECTOR OF REVENUE, STATE of Missouri, Respondent.

### No. 77080.

Supreme Court of Missouri, En Banc.

March 21, 1995.

As Modified on Denial of Rehearing April 25, 1995.

---

Richard A. King, Deborah A. Polk, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

■ In this case we determine whether a bank is entitled to a bank franchise tax refund for income it claims it mistakenly reported when it changed accounting methods. The Director of Revenue and the Administrative Hearing Commission denied the refund. As this case involves the construction of the revenue laws of this state, we have jurisdiction. Mo.Const. art. V, § 3. Affirmed.

## I.

On January 1, 1990, The Farmers and Merchants Bank ("Farmers") changed from a cash method to an accrual accounting basis pursuant to demands of federal law. Ac-counting by the cash method requires reporting income when it is received, regardless of when it is earned. The accrual accounting basis requires reporting income when it is earned, regardless of when it is actually received.

The facts are not stated with clarity by the parties, but it appears that during 1989, income accrued to Farmers that it did not receive in 1989. Had Farmers remained on the cash basis, the income would have been reported when it was received. However, by switching to an accrual basis, income that accrued before January 1, 1990, which Farmers did not receive until on or after January 1, 1990, disappeared for income reporting purposes.

Pursuant to 26 U.S.C. § 481, Farmers filed an adjustment to its 1990 federal corporation income tax return to reflect the accounting change. This Section 481 adjustment showed income of $337,197.14 for 1990. Farmers elected to spread the income over six years, reporting only $81,307 on its 1990 federal income tax return.

Farmers now claims that it mistakenly reported its Section 481 accrued 1989 income as income in its 1991 Missouri bank franchise tax return.[1] Consistent with that belief, Farmers filed two amended bank franchise tax returns attempting to rectify its "mistake," the first on November 18, 1991, and the second on May 1, 1992. On September 11, 1992, the Director of Revenue issued a letter authorizing part and disallowing part of the refund Farmers claimed.[2]

Farmers pursued its refund through the administrative review process. When the Administrative Hearing Commission denied it relief, Farmers sought review in this Court.

## II.

### A.

■ The Missouri bank franchise tax, though styled a franchise tax, is based in

1. The 1991 return is based on 1990 calendar year income.

2. The amended returns also sought credit for sales tax paid to check printers. The Director approved that claim in part and denied it in part. The Department of Revenue issued a check to Farmers for the amount approved. Farmers appealed to the Administrative Hearing Commission as to the part denied and the Administrative Hearing Commission ordered the refund. That decision is not appealed here.

part on the taxpayer's income. § 148.030.2(2), RSMo 1994; *Centerre Bank of Crane v. Director of Revenue*, 744 S.W.2d 754, 757 (Mo. banc 1988). Farmers claims that its accrued but unreceived 1989 income falls outside the definition of gross income found in Section 148.040.1, RSMo 1994, because the income was not "derived during the income period."

Section 148.040.4, RSMo 1994, provides that "[n]et income shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer." Farmers places great stock in this phrase, but passes quickly by the words that follow: "[U]nless such method does not clearly reflect income, in which case the computation shall be made in accordance with such method as in the opinion of the director does clearly reflect the income."

This is the nub of the case. Does the accounting method employed by Farmers clearly reflect its income? Farmers argues that there is no evidence that its method of accounting does not clearly reflect income and that the Administrative Hearing Commission improperly concluded otherwise. *See Al–Tom Investment, Inc. v. Director of Revenue*, 774 S.W.2d 131, 132 (Mo. banc 1989) ("A decision of the Administrative Hearing Commission is to be upheld if it is authorized by law and supported by competent and substantial evidence upon the whole record.") We disagree.

The Internal Revenue Code, 26 U.S.C. § 481, expressly provides for adjustments to income "in order to prevent amounts from being duplicated or omitted." By its own admission, Farmers included a Section 481 adjustment to its federal corporation income tax return for 1990. It was this adjustment that Farmers now claims it mistakenly included on its Missouri bank franchise tax. Farmers' filing of the Section 481 adjustment—an adjustment predicated on a federal tax return that otherwise fails to prevent the duplication or omission of income—provided a sufficient basis for the Director and the Administrative Hearing Commission to conclude that Farmers' Missouri bank franchise tax did not "clearly reflect the income" for 1990. § 148.040.4.

The fallacy of Farmers' position is shown clearly if the accounting change is reversed—from accrual to cash. In that circumstance, the income accrued but not received in 1989 would have been taxed in 1989 and again in 1990 when Farmers received it. To adopt Farmers' position would require that that income be taxed twice. We doubt that Farmers would pursue its argument as to the proper interpretation of the Section 148.040 with the same ardor if the facts were reversed.

Section 481 of the Internal Revenue Code allows the taxpayer to spread its adjustments to income created by changes in accounting methods over a period of years. Farmers' Section 481 adjustments to income under their federal return showed additional income of $337,197.14, of which it declared $81,307 on its 1990 federal return. By agreement with the Internal Revenue Service, Farmers decided to spread the remaining income over five additional years.

Section 148.040.4 vests the Director of Revenue with discretion to adopt a method of accounting that "does clearly reflect the income." Here, the Director accepted Farmers' federal return, including the deferral of the remaining $255,890.14 to subsequent tax years, as an accounting method that clearly reflected Farmers' income. Farmers does not argue that the Director's decision to accept Farmers' federal adjustment as the appropriate method to account for income was an abuse of her discretion. The point is denied.

**B.**

■ Under authority of Section 143.831, RSMo 1994, Farmers claims that the Director's failure to deny its claim for refund within 120 days estops the Director from denying the refund after the expiration of that time. That statute states: "The director of revenue shall mail notice of h[er] action on the claim for refund within one hundred twenty days of the mailing of such claim."

■ Whether the statutory word "shall" is mandatory or directory is a function of context. *See State ex rel. Missouri Highway*

*and Transportation Commission v. Muegge,* 842 S.W.2d 192, 195 (Mo.App.1992). Where the legislature fails to include a sanction for failure to do that which "shall" be done, courts have said that "shall" is directory, not mandatory. *Garzee v. Sauro,* 639 S.W.2d 830, 832 (Mo.1982); *State ex inf. Mitchell v. Heath,* 132 S.W.2d 1001, 1003 (Mo.1939). Moreover, courts have concluded that statutes directing the performance of an act by a public official within a specified time are directory, not mandatory. *Schlafly v. Baumann,* 108 S.W.2d 363, 366 (Mo.1937).

Section 143.831 creates a duty in the Director to respond to claims for refunds. The legislature did not include any statutory penalty for the Director's failure to respond within the time established, however. Thus, the Director's failure to respond to a claim for refund within 120 days does little more than establish a time after which an action for mandamus will lie against the Director to compel a decision on a refund claim. It does not follow, however, as Farmers wishes, that all refund claims to which the Director fails to respond within 120 days are automatically resolved in favor of the taxpayer. We are confident that the omission of a sanction in Section 143.831 is an expression of the legislature's desire to protect the state's coffers from unwarranted refunds automatically given as a result of administrative oversight or the heavy demands on the time of the official responsible for the entirety of the state's revenue generating apparatus.

In addition, we presume that taxpayers are better served by well-considered, though tardy responses to their claims for refund by the Director. Given time to contemplate, the Director may decide in the taxpayer's favor, avoiding the necessity and expense of further litigation. If Farmers' reading of the statute were correct, we imagine the Director would be forced to issue blanket denials of all claims for refund that reach the 120–day

stage in order to avoid the automatic refunds Farmers claims the statute demands.

The point is denied.[3]

### III.

The decision of the Administrative Hearing Commission is affirmed.

All concur.

---

**3.** Farmers' third point claims that the Administrative Hearing Commission erred in holding that the Director "may issue a credit voucher instead of a refund." As we understand the point, the issue pertains to refunds of franchise tax for the Section 481 adjustment deduction and for a credit for sales tax paid to check printers. As to the former, given our holding in this case, the point is moot. As to the latter, the credit and refund denied by the Director, but ordered by the Administrative Hearing Commission, was not appealed to this Court. And there is no evidence that either a credit voucher or a cash payment has yet been tendered pursuant to the Administrative Hearing Commission's order. As such, the point is not ripe for review.