CITIZENS FOR ENVIRONMENTAL SAFETY, INC., Ms. Charimonde Heger, Ms. Marjorie McCune, and Mr. Roy Sprinkle, Petitioners–Appellants,

v.

MISSOURI DEPARTMENT OF NATURAL RESOURCES, and David A. Schorr, Director, and Southwest Regional Landfill, Inc., Respondents–Respondents.

No. 22497.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 27, 1999.

Motion for Rehearing and Transfer Denied Dec. 23, 1999.

---

John E. Price, John F. Appelquist, Springfield, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Timothy P. Duggan, Asst. Atty. Gen., Jefferson City, for respondent Missouri Dept. of Natural Resources, et al.

David A. Taylor, Jefferson City, for Respondent Southwest Regional Landfill.

KENNETH W. SHRUM, Judge.

Appellants petitioned the circuit court for judicial review of a decision by the Missouri Department of Natural Resources ("MDNR") to issue a permit to Southwest Regional Landfill, Inc., ("SRL") to construct a sanitary landfill. Following trial, the circuit court found, *inter alia,* that "MDNR's decision [to issue the permit] was not unlawful, unreasonable, arbitrary, capricious or an abuse of discretion." Based on this and other findings, the trial court denied the relief requested by Appellants. This appeal followed. We affirm.

SRL submitted its application for a permit to construct a sanitary landfill in Jasper County, Missouri, on April 3, 1991. MDNR issued SRL a permit to construct the proposed landfill on August 11, 1995. During the lengthy period of review, SRL amended its permit application seven times, and MDNR and SRL exchanged voluminous correspondence. Appellants opposed SRL's application for a permit and participated in the review process by corresponding with MDNR and attending public hearings. After MDNR approved SRL's permit application, Appellants filed a four-count petition for judicial review of MDNR's decision to issue the permit with the circuit court. Following trial, the circuit court entered judgment in favor of MDNR. Appellants appeal the circuit court's judgment. Appellants' brief raises only legal issues for our determination.

Consequently, we will recount additional facts only as necessary in our discussion.

## STANDARD OF REVIEW

■ Appellants filed their four-count petition for review of MDNR's decision under § 536.150.[1]

"In cases governed by § 536.150, [i.e., noncontested cases,] the circuit court conducts a *de novo* review in which it hears evidence on the merits of the case, makes a record, determines the facts and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion."

*State ex rel. Donelon v. Division of Employment Sec.,* 971 S.W.2d 869, 873–874[2] (Mo.App.1998). On appeal from a circuit court's review of an agency decision in a noncontested case, we review the circuit court's decision and not the agency's decision. *Id.* at 873[1]. Because the circuit court's review of a noncontested case is conducted as a court-tried action, our review is governed by the principles enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). *State ex rel. Valentine v. Board of Police Comm'rs of Kansas City,* 813 S.W.2d 955, 957 (Mo.App.1991). Accordingly, we will not reverse the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32[1]; *State ex rel. Valentine,* 813 S.W.2d at 958[8].

1. The trial court determined and the parties do not dispute that this was a "noncontested case."

2. References to § 226.720 are to RSMo 1994. In pertinent part, § 226.720 states:
   "1. No junkyard shall be established, maintained or operated within two hundred feet of any other state or county road in this state unless such junkyard is screened from the road by a tight board or other screen fence not less than ten feet high, or of sufficient height to screen the wrecked or

## DISCUSSION AND DECISION

### *Point I: MDNR's Failure to Require Compliance with § 226.720.1*

■ In the first of three points relied on, Appellants argue that the trial court erred in finding that MDNR did not act "unreasonably, arbitrarily or capriciously in granting SRL's permit application" because SRL is bound to construct the landfill in accordance with the terms of the MDNR permit and the permit calls for the landfill to be constructed within 200 feet of two county roads but does not require SRL to construct a fence or screen along these roads as required by § 226.720.1.[2]

Appellants' argument is wholly dependent on the premise that SRL must construct the landfill in accordance with the terms of the permit issued by MDNR and that SRL cannot deviate from the terms of the permit by building anything not specifically authorized in the permit. We believe this premise is erroneous. It is true that the terms of the MDNR permit require SRL to comply with all "approved plans, specifications and operating procedures." However, the terms of the permit do not prohibit SRL from making other improvements to or uses of the subject property. In other words, the fact that the permit issued to SRL does not require construction of fencing or screening along the county roads does not preclude SRL from doing so. In fact, the permit states:

"This permit is not to be construed as compliance with any existing Federal or State environmental laws other than the Missouri Solid Waste Management law.

disabled automobiles or junk kept therein from the view of persons using the road on foot or in vehicles in the ordinary manner. . . .
   "2. Any person, firm or corporation who establishes, conducts, owns, maintains or operates a junkyard without complying with the provisions of this section shall, on conviction, be guilty of a misdemeanor." In § 226.660(4) RSMo 1994, the legislature defined the term "junkyard" to include a "garbage dump or sanitary fill."

*Nor should this be construed as a waiver for any other regulatory requirements.* This permit is not to be construed as compliance with any existing local ordinances or zoning requirements nor does it supersede any local permitting or zoning requirements." (Emphasis added.)

This disclaimer clearly recognizes the possible applicability of other laws and expressly rejects any notion that the permit excuses or demonstrates compliance with such laws. Furthermore, the permit does not, in any way, attempt to prohibit the permittee from complying with any other applicable laws.

■ Moreover, we note that "administrative agencies ... possess only those powers expressly conferred or necessarily implied by statute." *Bodenhausen v. Missouri Bd. of Registration for the Healing Arts,* 900 S.W.2d 621, 622[1] (Mo.banc 1995); *Mueller v. Missouri Hazardous Waste Management Comm'n,* 904 S.W.2d 552, 557[4] (Mo.App.1995). Even the Appellants concede that MDNR is not responsible for enforcing § 226.720.1, which is part of the state highways and transportation law, administered and enforced by the Missouri Department of Highways and Transportation and the State Highways and Transportation Commission, §§ 226.005–226.020. MDNR is neither expressly nor implicitly vested with power to administer or enforce § 226.720.1; thus, we conclude that MDNR possesses no such authority.

Because SRL is not precluded from constructing fencing or screening along roadways—i.e., complying with § 226.720.1—and because MDNR is not authorized to administer and enforce § 226.720.1, MDNR's issuance of a permit that does not expressly require SRL to comply with § 226.720.1 was not unreasonable, arbitrary, or capricious. Accordingly, Point I is denied.

*Point II: MDNR's Failure to Act Within Time Limits*

■ In their second point, Appellants argue that "[t]he trial court erred in concluding that the time deadlines to grant or deny SRL's permit imposed upon MDNR by statute, regulation and MDNR's own written policies, were merely directive, not mandatory, and that MDNR's admitted violation of the time deadlines was not therefore, arbitrary, capricious and unreasonable...."

Appellants cite four ways in which MDNR's issuance of the permit to SRL was untimely and, therefore, void. First, Appellants argue that MDNR did not issue a permit within twenty-four months after receiving SRL's initial application (on April 3, 1991) in violation of § 260.205.2(3).[3] Second, Appellants recount that in a letter dated December 3, 1993, MDNR purported to grant SRL a one-year extension of time (from the date of the letter) for SRL to conform its plans to new federal regulations. Appellants point out that SRL failed to meet the one-year extended deadline. Third, Appellants contend that MDNR violated its own regulations requiring the agency to act on a completed permit application within 120 days. 10 C.S.R. 80–2.020(4)(A)(2). Fourth, Appellants argue that MDNR also violated its own "Expedited Permit Review Policy," which "requires a satisfactory response to MDNR's second technical comment or 'the application will be denied.'" Appellants point out that the trial court found "SRL did not provide a satisfactory response to MDNR's second comment letter."

Appellants contend the trial court erroneously concluded that these four time-limiting provisions are directory rather than mandatory. The crux of Appellants' argument is that each of these provisions use the mandatory words "shall" and "will." They also assert that the time limits are jurisdictional, and, consequently, MDNR's failure to comply with these time

---

**3.** All references to § 260.205 are to RSMo Cum.Supp.1991.

limits deprived MDNR of jurisdiction to grant a permit to SRL, rendering SRL's permit void.

Our supreme court addressed the issue of mandatory-versus-directory provisions in *Farmers and Merchants Bank v. Director of Revenue,* 896 S.W.2d 30 (Mo.banc 1995). In *Farmers,* the court stated, "Whether the statutory word 'shall' is mandatory or directory is a function of context. Where the legislature fails to include a sanction for failure to do that which 'shall' be done, courts have said that 'shall' is directory, not mandatory." 896 S.W.2d at 32–33[4] (citations omitted). After considering the time-limiting provisions here at issue, the trial court concluded that they were directory rather than mandatory because the provisions did not provide any sanction for a failure to comply with the time limits.

Appellants urge us to disregard the supreme court's holding in *Farmers* because the "ruling ... is unsound." Specifically, Appellants contend (1) that one of the cases cited by the supreme court in *Farmers,* i.e., *Garzee v. Sauro,* 639 S.W.2d 830 (Mo.1982), does not stand for the proposition for which the court cited it, and (2) that the *Farmers* holding conflicts with a previous supreme court holding, *R.B. Indus., Inc. v. Goldberg,* 601 S.W.2d 5 (Mo. banc 1980). We find no merit in Appellants' assertions.

This court is constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. CONST. art. V, § 2 (1945); *Farm Bureau Town and Country Ins. Co. of Missouri v. Rogers,* 959 S.W.2d 880, 883[1] (Mo.App.1997). Thus, we cannot disregard or revisit our supreme court's holding in *Farmers.*

Further, upon analyzing the *Farmers* decision, we find it does not suffer from the infirmities Appellants urge. The *Farmers* court cited *Garzee* for the proposition that the word "shall" is directory where a statute does not provide a sanction for failing "to do that which 'shall' be done." *See Farmers,* 896 S.W.2d at 33.

Appellants argue that *Garzee* held the opposite; that is, even though the statute used the word "shall" and provided no sanction for failing to comply, the supreme court held the statute was mandatory. While Appellants' summary of the *Garzee* holding is technically correct, it oversimplifies the case. The *Garzee* court was faced with a unique situation in which following the general mandatory-versus-directory rule would render the statute at issue unconstitutional. *Garzee,* 639 S.W.2d at 832. *See Southwestern Bell Telephone Co., Inc. v. Mahn,* 766 S.W.2d 443, 446 (Mo.banc 1989). The supreme court elected to interpret the statute consistent with our state and federal constitutions rather than follow the general mandatory-versus-directory rule. In so doing, the supreme court appears to have followed the common rule of statutory construction that an "ambiguous statute[ ] ... susceptible to more than one construction should be construed in a manner consistent with the constitution." *Savannah R–III Sch. Dist. v. Public Sch. Retirement Sys. of Missouri,* 950 S.W.2d 854, 858[10] (Mo.banc 1997). In summary, the *Garzee* court was confronted with a unique interpretive problem, and the supreme court's holding therein should not be viewed as an abandonment of the general mandatory-versus-directory rule, particularly since the court cited the rule in its discussion with no indication of disapproval. *Garzee,* 639 S.W.2d at 832.

We also note that Appellants' assertion that *Farmers* is in direct conflict with *Goldberg* is erroneous. *Goldberg* held that a circuit court was without jurisdiction to review a state agency's decision when the party seeking judicial review filed its petition out of time. 601 S.W.2d at 7. *Goldberg* considered only whether the circuit court had jurisdiction to review the agency decision, not whether the *agency* had jurisdiction as asserted by Appellants. Consequently, *Farmers* and *Goldberg* are not inconsistent.

Appellants also rely on *State ex rel. Laidlaw Waste Systems, Inc. v. City of Kansas City, Missouri,* 858 S.W.2d 753 (Mo.App.1993), for the proposition that statutory time limits imposed on state agencies are jurisdictional. *Laidlaw* does not aid Appellants. There, the court was required to decide whether a zoning board had the authority to reopen and rehear a case on which it had already rendered a decision. After concluding the zoning board did not have such authority, the *Laidlaw* court determined that the appellant's petition for judicial review of the zoning board's decision was untimely because it was filed more than thirty days after the zoning board rendered its original decision. *See* § 89.110 RSMo 1986. Thus, the court concluded that the circuit court was without jurisdiction to review the decision.

The *Laidlaw* court did state, "Time limits imposed upon administrative agencies by statute are jurisdictional. When a limit expires, the agency loses jurisdiction." 858 S.W.2d at 756[4]. However, we do not believe this statement can be lifted from the factual context of *Laidlaw.* Here, we are not presented with the problem of an agency attempting to reopen a final deci-

sion. Appellants' complaint is that MDNR's *original* decision was untimely. Thus, *Laidlaw* is factually distinguishable from the case at bar.

For all these reasons, *Farmers* is controlling here.

■ Having examined each of the four time-limiting provisions at issue, we observe that none of these provisions provide a sanction for failing to comply with the time limits set out therein. Because we find no other overriding considerations, *see Mahn,* 766 S.W.2d at 446, we conclude that all four provisions should be treated as directory under the law enunciated in *Farmers.* We are confirmed in our view by the fact that the language of § 260.205.2(5) strongly suggests the time limits are imposed for the purpose of protecting the *permit applicant*—not third parties—from endless delay in the permit application review process.[4] We hold, therefore, that MDNR's failure to comply with the four time-limiting provisions at issue neither deprived it of jurisdiction to issue a permit to SRL nor rendered its decision to issue the permit unreasonable, arbitrary, or capricious. For all the foregoing reasons, Point II is denied.[5]

---

4. In pertinent part, § 260.205.2(5) provides:

"(5) If the department fails to approve or deny an application for a permit or a permit modification within the time limits specified in subdivisions (3) and (4) of this subsection, the applicant may maintain an action in the circuit court of Cole County or that of the county in which the facility is located or is to be sited. The court shall order the department to show cause why it *has not acted* on the permit and the court may, upon the presentation of evidence satisfactory to the court, order the department to issue or deny such permit or permit modification." (Emphasis added.)

We agree with the MDNR's observation that the legislature's use of the phrase "has not acted" "suggests that [MDNR] would be called to account for why it has not acted *yet.*"

5. We do *not* view *Farmers* as "establishing the ironclad rule that a statute is automatically directory rather than mandatory anytime 'shall' is used without the inclusion of a sanc-

tion for the failure to comply with it" as suggested by the dissent. We fully understand and agree that the determination as to whether the word "shall" is directory or mandatory in such situations is dependent on its context. In discussing the context here, the dissent advances several "strong reasons" why § 260.205 should be interpreted to require MDNR to promptly review permit applications. Valid though these considerations may be, we believe there are more compelling interests at stake. "[T]he preservation of the public health is recognized as a goal of the *highest priority* and the accumulation of garbage is a serious threat to the public health." *Craig v. City of Macon,* 543 S.W.2d 772, 774[5] (Mo.banc 1976) (emphasis added) (citations omitted). Throughout human history, the menace that necessarily accompanies the unmanaged disposal of garbage, refuse, and filth has led to and intensified disease and plague. *Id.* at 773[1]. The need for sanitary landfills is undeniable, and the establishment of new landfills is inevitable. MDNR is charged with deciding when, where, why, and

*Point III: Lack of Region M Executive Board Review*

■ In their third and final point, Appellants argue that the trial court erred in concluding that MDNR did not act unreasonably, arbitrarily, or capriciously in issuing a permit to SRL because "Section 260.320.3(1) R.S.Mo. required that the Region M solid waste management district executive board review and comment upon SRL's permit application before the permit was issued, and the undisputed evidence shows that this review and comment did not occur."

In pertinent part, § 260.320[6] states:

"3. The [solid waste management district] executive board shall:

"(1) Review and comment upon applications for permits *submitted pursuant to section 260.205*, for solid waste processing facilities and solid waste disposal areas which are to be located within the region or, if located in an adjacent region, which will impact solid waste management practices within the region." (Emphasis added.)

The issue for our determination is whether the phrase "applications for permits submitted pursuant to section 260.205" refers to all permit applications submitted to MDNR under § 260.205, or whether the phrase relates only to permit applications expressly required by § 260.205 to be submitted to the executive board. Appellants urge the former construction, which would require an executive board to review and comment on all applications submitted to MDNR for solid waste processing facilities and disposal areas to be located within the executive board's region, or those to be located within adjacent regions that "will impact solid waste management practices

within the region." Appellants further contend that because the Region M executive board did not review and comment on SRL's permit application, MDNR acted unreasonably, arbitrarily, or capriciously in granting a permit to SRL, and the trial court erred in not so finding.

The confusion seems to stem from § 260.205.4, which provides:

"Any person or operator ... who intends to obtain a permit in a solid waste management district *with an approved solid waste management plan* shall request a recommendation in support of the application from the executive board created in § 260.315." (Emphasis added.)

The trial court found that the Region M solid waste management district did not have an approved solid waste management plan prior to the time MDNR issued a permit to SRL. The trial court also found that, under § 260.205.4, a permit applicant need not request a recommendation from the executive board unless the solid waste management district has "an approved solid waste management plan." Finally, the trial court concluded that § 260.320.3(1) is not implicated if a solid waste management district does not have a solid waste management plan because § 260.320.3(1), "by its terms, is to be read in context with Section 260.205, which ... requires the Solid Waste Management District to have an approved solid waste management plan."

We agree with the trial court's finding that a permit applicant is not required to request a recommendation from a solid waste management district executive board unless the district has an approved solid waste management plan. § 260.205.4.

how such new landfills will be constructed and operated. We question whether the health, welfare, and safety of the general public will be better served by forcing MDNR to "rush to judgment" in reviewing permit applications. Without denigrating the concerns raised by the dissent, we believe that, on balance, the "goal of ... highest priority" mentioned in *Craig*, i.e., preservation of the

public health, dictates that decisions of such import should be made only after careful deliberation and that MDNR should be given sufficient time to ensure that the landfills it ultimately permits comport with certain minimum standards of health and safety.

6. All references to § 260.320 are to RSMo Cum.Supp.1991.

We disagree, however, with the trial court's finding that § 260.320.3(1) is not implicated unless the district has an approved solid waste management plan. The plain language of § 260.320.3(1) simply does not support that conclusion.

"The executive board shall ... [r]eview and comment upon applications for permits submitted pursuant to section 260.205 ...." § 260.320.3(1). It seems clear to us that this provision refers to all permit applications submitted to MDNR under § 260.205, not just the applications of those who must request an executive board recommendation under § 260.205.4. We base this conclusion on several factors. First, had the legislature intended to limit executive board review in § 260.320.3(1) to solid waste management districts with approved solid waste management plans, it easily could have made specific reference to § 260.205.4.

Second, we find it significant that in § 260.205.4, the permit applicant is required to request a *recommendation,* while in § 260.320.3(1), the executive board is required to *review and comment* on applications. When a solid waste management district executive board is asked for a recommendation under § 260.205.4, the executive board is required to review the application to determine the impact of the permit applicant's plan on, and the plan's conformity with, "the approved district solid waste management plan." § 260.205.4. Consequently, the recommendation requirement is the solid waste management district's instrument for fulfilling its approved solid waste management plan. This is logically different than a mere "review and comment" on the general propriety of a permit application, which seems to be the thrust of the executive board "review and comment" requirement in § 260.320.3(1). *See State ex rel. Competitive Telecommunications v. Missouri Pub.*

*Serv. Comm'n,* 886 S.W.2d 34, 39[10] (Mo. App.1994) ("[A]ll words utilized by the legislature are presumed to have separate and individual meaning, which is essentially a presumption against redundancy.").

Third, in construing any statute, we are "obligated to ascertain the intent of the legislature from the language used and to give effect to that intent without arriving at an absurd result." *David Ranken, Jr. Technical Inst. v. Boykins,* 816 S.W.2d 189, 192[7] (Mo.banc 1991); *City of Ellisville v. Lohman,* 972 S.W.2d 527, 534[7] (Mo.App.1998). We believe the legislature's purpose here, as evident from the language of §§ 260.205.4 and 260.320, is to allow for localized input and planning in the permitting of solid waste processing facilities and disposal areas. To construe these statutes as meaning that a solid waste management district executive board is to review, comment on, and recommend a permit applicant's plan only if the district has an approved solid waste management plan would frustrate the legislative purpose of enabling regional input in the state's solid waste processing and disposal permit review process. So long as the district did not have an approved solid waste management plan, it would have no real function in the permit review process. Such an interpretation seems absurd considering the purpose for these statutes.

For all these reasons, we conclude that § 260.320.3(1) requires solid waste management district executive boards to review and comment on all permit applications submitted to MDNR under § 260.205.[7] The trial court erred in finding otherwise.

Nevertheless, the trial court also found that § 260.320.3(1) was directory, not mandatory, because the statute pro-

---

**7.** Provided, of course, that a solid waste management district executive board need only review and comment on permit applications "for solid waste processing facilities and solid waste disposal areas which are to be located within the region or, if located in an adjacent region, which will impact solid waste management practices within the region." § 260.320.3(1).

vides no sanction for the executive board's "failure to do that which 'shall' be done." *Farmers,* 896 S.W.2d at 33. We agree with this finding. Thus, the executive board's failure to review and comment on a permit application does not render MDNR's decision to issue a permit on that application unreasonable, arbitrary, or capricious.

■ We hold that the trial court erred in finding that an executive board's "review and comment" under § 260.320.3(1) are required only if the solid waste management district has an approved solid waste management plan. However, the trial court correctly found that, under *Farmers,* § 260.320.3(1) is directory, and the failure of the Region M executive board to review and comment on SRL's permit application does not render MDNR's decision to issue a permit to SRL unreasonable, arbitrary, or capricious. "A bench tried judgment that reaches a correct result ... will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment." *Fix v. Fix,* 847 S.W.2d 762, 766[11] (Mo.banc 1993); *Schmidt v. Warner,* 955 S.W.2d 577, 585[11] (Mo.App.1997). Consequently, Point III is denied.

The circuit court's judgment is affirmed.

MONTGOMERY, J., CONCURS.

GARRISON, C.J., dissents in separate opinion.

PHILLIP R. GARRISON, Chief Judge, dissenting.

I respectfully dissent. In the context of this case, I disagree with the interpretation of the word "shall" as being directory as opposed to mandatory. Section 260.205.2(3) provides that MDNR "shall" approve or deny an application for a permit within twenty-four consecutive months of its receipt. MDNR failed to do so here. In my view, as a result, MDNR lost jurisdiction over SRL's permit application.

In construing statutory provisions we are to adhere to the primary rule of statutory construction, which is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in light of their plain and ordinary meaning. *Harrison v. MFA Mutual Ins. Co.,* 607 S.W.2d 137, 143 (Mo. banc 1980). We must, however, refrain from adding provisions under the guise of construction if they are not plainly written or necessarily implied from the words used. *Cook v. Pedigo,* 714 S.W.2d 949, 952 (Mo.App. E.D. 1986).

An administrative agency possesses only those powers conferred upon it by the legislature. *State ex rel. Laidlaw v. Kansas City,* 858 S.W.2d 753, 754 (Mo.App. W.D.1993). Time limits imposed upon administrative agencies by statute are jurisdictional and result in a loss of jurisdiction when the time limit expires. *Id.* at 756. Here, MDNR was limited to twenty-four consecutive months within which to approve or deny an application. Section 260.205.2(3). The language of that statute is clear, and I believe imposed a jurisdictional requirement.

I recognize that *Farmers and Merchants Bank v. Director of Revenue,* 896 S.W.2d 30 (Mo. banc 1995), applies the word "shall" in a statute as being directory rather than mandatory where the legislature did not include a sanction for the failure to do that which the statute provides "shall" be done. There the Court applied "shall" as directory rather than mandatory in a situation where a claimant seeking a franchise tax refund claimed that inaction within the statutorily prescribed period automatically resulted in a required finding in its favor. The Court recognized, however, that whether "shall" is mandatory or directory is a function of context, citing *State ex rel. Missouri Highway and Transp. Comm'n v. Muegge,* 842 S.W.2d 192, 195 (Mo.App. E.D.1992).

In *Muegge,* the court acknowledged the general rule that if a statute provides what

results shall follow a failure to comply with its terms, it is mandatory and must be obeyed, and conversely, if it does not prescribe the results that follow, it is merely directory. *Id.* at 195. The court also acknowledged, however, that "shall" in a statute is generally interpreted as being mandatory and, significantly, recognizes that cases deciding whether a requirement is mandatory or directory "look at the effect of ruling one way or the other." *Id. Muegge* involved a claim by a landowner for distribution of a condemnation award between it and a lessee. The court noted that it would be counter-productive for it to rule that the trial court lost jurisdiction to act since the question of distribution must still be resolved. *Id.* at 195–96. Likewise, it should be noted that in *Farmers and Merchants Bank*, the contention was that failure to act on a claim for refund automatically resolved it in favor of the taxpayer. Our Supreme Court considered the reasonableness of that result and the legislature's apparent desire to "protect the state's coffers from unwarranted refunds automatically given as a result of administrative oversight." 896 S.W.2d at 33. I do not interpret *Farmers and Merchants Bank* as establishing the ironclad rule that a statute is automatically directory rather than mandatory anytime "shall" is used without the inclusion of a sanction for the failure to comply with it. The Court did not say that and reached that result upon a review of the statute in the context of the facts of that case.

I believe the result must be different in the context of this case. There are strong reasons why the legislature would require MDNR to promptly review applications for such permits. In cases such as *Deimeke v. State Highway Comm'n,* 444 S.W.2d 480 (Mo.1969), our courts have recognized the impact of the utilization of property on neighborhoods and the public generally. Thus, in *Deimeke,* the Court acknowledged that property uses which offend sensibilities and debase property values affect not only the adjoining property owners, but the general public as well. *Id.* at 484.

There is good reason for requiring MDNR to either approve or deny an application under § 260.205 within the twenty-four consecutive months provided. Neighboring landowners and communities are entitled to a resolution of these issues in a prompt manner. A lingering application to use property for a sanitary landfill obviously will have a continuing effect on land values in the area, probably chilling the marketability of some tracts of neighboring property. Likewise, the applicant will enjoy similar benefits from prompt action in that the status of their proposal is required to receive prompt attention and action. While the public at large is benefited by a comprehensive review of such applications, I believe that the legislature has determined that twenty-four months is sufficient for that purpose. In my view, if that time limitation is not sufficient for a complete review, any change should come from the legislature rather than as a result of judicial interpretation. I believe it is reasonable to conclude that if the legislature had not intended "shall" in § 260.205.2(3) to be mandatory, it would not have included the definite time limitation of twenty-four months.

This interpretation is fortified, in my opinion, by the fact that other sections of Chapter 260 also employ "shall" without including corresponding sanctions for a failure to comply. For instance, § 260.203.1 provides that infectious waste transferred from the premises of the generator "shall" be taken to an infectious waste processing facility holding a valid permit; § 260.203.4 provides that MDNR "shall" provide for a registration process for all hospitals which "shall" include an application containing a statement that the applicant understands and will comply with the provisions of §§ 260.200 to 260.245; § 260.205.1 provides that a permit "shall" not be issued for a sanitary landfill to be located in a flood area; § 260.207 provides that the MDNR "shall" not issue a permit to any person for the operation of any resource recovery facility,

solid waste processing facility or sanitary landfill if that person has three or more convictions of certain crimes after a certain time; § 260.207.2 provides that the director of the MDNR "shall" suspend, revoke or not renew the permit of any person to operate a resource recovery facility, solid waste processing facility or sanitary landfill if that person has three or more convictions as described therein; § 260.210.4 provides that MDNR "shall" investigate reports of the dumping or depositing of solid waste or demolition waste in a manner contrary to the requirements of that chapter and "shall" issue a cease and desist order if it determines that such has occurred; and § 260.210.5 provides that the MDNR "shall" order a site cleaned up when it determines that the owner or operator has accepted remuneration or otherwise benefited financially for placing solid waste or demolition waste in or on a site in contravention of that section. These are just a few of the many examples of the legislature's use of "shall" in Chapter 260. I believe that it would be contrary to the intent of the legislature to hold that each of these is merely directory rather than mandatory.

In my opinion these considerations require the conclusion that the provision in § 260.205.2(3) that MDNR "shall approve or deny the application" within twenty-four consecutive months of its receipt means that the provision is mandatory and not merely directory. I would, therefore, hold that MDNR lost jurisdiction over SRL's application by failing to comply with that mandatory requirement.

## OPINION ON MOTIONS FOR REHEARING OR TRANSFER.

■ Pursuant to Missouri Supreme Court Rules 84.17 and 83.02 (1999), Appellants request that we rehear this case or, in the alternative, transfer it to the Supreme Court of Missouri. In support of their motions, Appellants contend, among other things, that while we acknowledged

that *Farmers and Merchants Bank v. Director of Revenue,* 896 S.W.2d 30 (Mo.banc 1995), does not establish an "ironclad rule that a statute is automatically directory rather than mandatory any time 'shall' is used without the inclusion of a sanction for the failure to comply with it," we nonetheless applied *Farmers* as an ironclad rule in rejecting Appellants' Point III argument. There, Appellants argued that the Missouri Department of Natural Resources ("MDNR") abused its discretion by granting Southwest Regional Landfill, Inc., ("SRL") a permit to construct a landfill because the Region M solid waste management district executive board ("executive board") had not reviewed and commented on SRL's permit application as required by § 260.320.3(1). As recounted in our original opinion, the trial court made alternative findings regarding the interpretation of § 260.320.3(1), including a finding that the provision was directory rather than mandatory because there was no sanction for the executive board's failing to do that which "shall" be done. In reaching that conclusion, the trial court relied on *Farmers.* As we stated in our original opinion, we agree with that alternative finding. While we had no intention of abandoning the contextual analysis described in note 5, we did not expressly discuss the contextual considerations that led us to our conclusion in Point III. In the interest of preventing any misinterpretation of our opinion in this case, we briefly address this issue.

MDNR has no authority to compel regional executive boards to comply with the terms of § 260.320.3(1). To conclude that any action MDNR takes in the absence of an executive board "review and comment" is invalid would afford the executive boards a great deal of power over MDNR. In essence, a regional executive board— which is comprised of citizens living within the region, § 260.315.4(2)—could preclude MDNR from issuing a permit for construction and operation of a landfill within or adjacent to its region simply by refusing to "review and comment" on permit applica-

tions for such landfills. In this manner, MDNR could be rendered powerless over the permit process. While it might be possible to compel the executive boards to comply with § 260.320.3(1) by resorting to judicial processes, we do not believe the legislature intended such an absurd result. Moreover, it would defy logic for Appellants to support any such construction since such a reading would enable regional executive boards to further delay or impede the permit review process by refusing to "review and comment" under § 260.320.3(1).

As we stated in the principal opinion, we believe that "the legislature's purpose here, as evident from the language of [§ 260.320], is to *allow for* localized input and planning in the permitting of solid waste processing facilities and disposal areas." (Emphasis added.) At a minimum, it seems that MDNR must afford the regional executive boards an opportunity to review and comment on permit applications. To do otherwise could constitute an abuse of discretion on the part of MDNR. Nevertheless, Appellants do not complain that MDNR somehow deprived the Region M executive board of an opportunity to "review and comment" on SRL's permit application. Rather, they contend that the Region M executive board did not conduct such a "review and comment" in this case and that MDNR abused its discretion by issuing a permit in the absence thereof. Given the context of the legislature's use of the word "shall" in § 260.320.3(1), we do not believe the legislature intended for the provision to be mandatory. We, therefore, conclude that § 260.320.3(1) is directory. As a result, MDNR did not abuse its discretion by issuing a permit to SRL even though the Region M solid waste management district executive board did not "review and comment" on SRL's permit application.

Appellants' motions for rehearing and, in the alternative, transfer are denied.

PHILLIP R. GARRISON, Chief Judge, dissent on motions for rehearing or transfer.

I respectfully dissent to the extent the Opinion On Motions For Rehearing Or Transfer concludes, by interpretation, that the term "shall" as used in § 260.320.3 is directory rather than mandatory for the same reasons referred to in my earlier Dissenting Opinion. It does appear to me, however, that the use of the word "shall" in that section is directed to the executive board of the solid waste management council rather than as it may affect the MDNR's actions.