Thomas E. **BAUER**, Respondent,

v.

**TRANSITIONAL SCHOOL DISTRICT OF THE CITY OF ST. LOUIS,**
Defendant,

**The Board of Education of The City of St. Louis, et al., Appellants.**

No. SC 84807.

Supreme Court of Missouri, En Banc.

June 17, 2003.

Rehearing Denied Aug. 26, 2003.

Kenneth C. Broston, Dirk DeYong, Rufus J. Tate, St. Louis, for Appellants.

Charles R. Oldham, St. Louis, for Respondent.

STEPHEN N. LIMBAUGH, JR., Chief Justice.

The Board of Education of the City of St. Louis appeals from the issuance of a writ of mandamus by the Circuit Court of the City of St. Louis, ordering the Board to certify the "St. Louis Students' Bill of Rights" for placement on the ballot at the "next regularly scheduled general election." This Court granted a stay of the writ pending disposition of this appeal. Because this appeal involves a challenge to the validity of a Missouri statute, this Court has exclusive jurisdiction. Mo. CONST. art. V, sec. 3. The "Order and Judgment" of the circuit court is now vacated.

I.

In May 1998, the Missouri General Assembly enacted Senate Bill 781 ("SB 781"), which contained a provision titled the "St. Louis Students' Bill of Rights." Codified as section 162.666, RSMo 1998, the Students' Bill of Rights established very specific student assignment procedures and educational practices for the St. Louis City school district. Implementation of the Students' Bill of Rights, however, was not immediate upon passage of SB 781. Subsection 10 of section 162.666 provides,

The provisions of the St. Louis students' bill of rights shall only become effective upon approval by a majority of the voters of the city of St. Louis voting thereon. The governing board of the transitional district established pursuant to section 162.1100 may conduct a legal

analysis of the program enumerated in this section, shall publish any such analysis and make the analysis available to the public and *shall* propose, to the extent that the program is consistent with the Missouri and United States Constitutions, place [sic] before the voters of the city of St. Louis *no later than March 15, 1999,* a proposal to implement the program. If approved by a majority of such voters, the program shall be implemented consistent with the Missouri and United States Constitutions. (Emphasis added.)

The Transitional School District ("TSD") referred to in section 162.666.10 was created under section 162.1100, RSMo 1998, which also provided that the State Board of Education could dissolve the TSD "upon a determination that the transitional school district has accomplished the purposes for which it was established and is no longer needed," sec. 162.1100.12.

Following the enactment of SB 781, TSD lawyers conducted a legal analysis of the Students' Bill of Rights as provided in section 162.666.10. The TSD declined or neglected to publish the analysis, but reportedly concluded that the Students' Bill of Rights was unconstitutional and, therefore, refused to certify it for voter approval.

After the TSD's decision, respondent filed a petition in mandamus in the circuit court to compel the TSD to certify the Students' Bill of Rights for placement on the ballot. The St. Louis Board of Election Commissioners was later joined as a defendant in the action. The circuit court, however, dismissed respondent's petition, concluding that under the terms of section 162.666.10 the constitutionality of the Students' Bill of Rights must be determined before the court could rule on whether it should be placed before the voters. On January 29, 1999, respondent supplement-

ed his writ petition with a request for a declaratory judgment that the Students' Bill of Rights was constitutional under the Missouri and United States Constitutions. No further action was taken in the case before March 15, 1999, the deadline imposed under 162.666.10. Thereafter, on July 1, 1999, the State Board of Education, pursuant to 162.1100.12, dissolved the TSD. The Board's decision was not appealed.

On October 4, 1999, respondent filed a Second Amended Petition, adding the St. Louis Board of Education as a defendant. After temporarily being removed to federal court, the case was docketed for trial in the circuit court, although the TSD was immediately dismissed because it had been previously dissolved by the State Board of Education. At trial, the central question was the constitutionality of the Students' Bill of Rights. Deciding this question in the affirmative, the circuit court ordered both the St. Louis Board of Education and the TSD, notwithstanding its previous dismissal, to certify the Students' Bill of Rights for placement on the ballot at the "next regularly scheduled general election," and also ordered the St. Louis Board of Election Commissioners to place the issue on the ballot.

Appellant St. Louis Board of Education now argues that this case is moot and, in the alternative, that section 162.666 is unconstitutional.

## II.

■ Appellant's mootness argument turns on the statutorily imposed deadline of March 15, 1999, the date by which section 162.666.10 states that the TSD "shall" certify the Students' Bill of Rights for voter approval. Appellant maintains that use of the word "shall" demonstrates the General Assembly's mandate that the Students' Bill of Rights be certified for place-

ment on the ballot, if ever, "no later than March 15, 1999." On the other hand, respondent argues that the word "shall" is merely directory and does not preclude certification and a vote on the proposal after March 15, 1999.

■■■ Of course, to determine the meaning of a statute, "the starting point is the plain language of the statute itself." *Jones v. Director of Revenue*, 981 S.W.2d 571, 574 (Mo. banc 1998). Generally, the word "shall" connotes a mandatory duty. *State ex rel. City of Blue Springs v. Rice*, 853 S.W.2d 918, 920 (Mo. banc 1993). However, Missouri courts have held that "where a statute or rule does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory." *State v. Tisius*, 92 S.W.3d 751, 770 (Mo. banc 2002); *Rundquist v. Director of Revenue*, 62 S.W.3d 643, 646 (Mo.App.2001); *Kersting v. Director of Revenue*, 792 S.W.2d 651, 652–53 (Mo.App.1990). Relying on this principle, respondent argues that the word "shall" in section 162.666.10 should have a directory rather than mandatory meaning because the statute does not provide a penalty for failure to comply with the March 15, 1999, deadline.

■■■ Though not completely lacking in merit, respondent's argument is nonetheless unpersuasive, because the presence or absence of a penalty provision is "but one method" for determining whether a statute is directory or mandatory. *Southwestern Bell Tel. Co. v. Mahn*, 766 S.W.2d 443, 446 (Mo. banc 1989). Indeed, "[t]he absence of a penalty provision does not automatically override other considerations." *Id.* Whether the statutory word "shall" is mandatory or directory is primarily a function of context and legislative intent. *Farmers & Merchants Bank and Trust Co. v. Director of Revenue*, 896 S.W.2d 30, 32 (Mo. banc 1995).

In this case, the General Assembly's selection of March 15, 1999, as the deadline for certification of the Students' Bill of Rights was not random. As noted, the Students' Bill of Rights was enacted as part of SB 781, which, itself, contained other provisions designed to facilitate the settlement of Missouri's long-pending school desegregation cases in federal court, including litigation involving the St. Louis public schools. One such provision was section 163.035, RSMo 1998, which tied in the federal court-ordered financial obligations of the state with the proposed final disposition of those cases on March 15, 1999. Thus, March 15, 1999, was an absolute deadline of extreme significance—it was the date by which the General Assembly intended the outcome of all of the matters addressed by SB 781 to be known.

Reading section 162.666.10 *in pari materia* with the other provisions enacted in SB 781, and section 163.035 in particular, this Court concludes that the word "shall" was intended to be mandatory. As a result, and contrary to the circuit court's decision, to comport with the statute it was necessary that the Students' Bill of Rights be certified and placed on a ballot "no later than March 15, 1999." Accordingly, because the TSD declined to certify the Student's Bill of Rights by that deadline, and because respondent failed or was unable to timely take the necessary steps to compel it to do so, any judgment by this or any other court with respect to the Students' Bill of Rights would have no practical effect, thus, making the action brought by respondent moot. *See C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 325 (Mo. banc 2000); *Bank of Washington v. McAuliffe*, 676 S.W.2d 483, 487 (Mo. banc 1984). Because the mootness issue is dispositive, the other arguments raised by appellant need not be addressed.

## III.

Having determined that this action is moot, the circuit court's "Order and Judgment" is vacated.

BENTON, STITH AND PRICE, JJ., and RUSSELL, SHAW and CALLAHAN, Sp. JJ., concur.

WHITE, WOLFF and RICHARD TEITELMAN, JJ., not participating.