

# SUPREME COURT OF MISSOURI
## en banc

MELODY FRYE,                 )

                                   )

                   Respondent,   )

                                   )

            v.                       )     No. SC93471

                                   )

RONALD J. LEVY, DIRECTOR,     )

STATE OF MISSOURI,             )

DEPARTMENT OF SOCIAL SERVICES,   )

CHILDREN'S DIVISION,          )

                                   )

                   Appellant.   )

### APPEAL FROM CIRCUIT COURT OF HOWELL COUNTY
The Honorable Michael Ligons, Judge

*Opinion issued July 8, 2014*

The Children's Division of the Missouri Department of Social Services

("Children's Division" or "Division") appeals from the trial court's grant of summary

judgment in favor of Melody Frye ("Mother").  The trial court ordered the Division not to

include Mother's name in the child abuse and neglect central registry because the

Division failed to comply with the 90-day deadline for investigations and determinations

under section 210.152.2, RSMo Supp. 2005.[1]  Because this judgment imposes a sanction

---

[1]  All statutory citations are to RSMo Supp. 2013, with the exception of citations to
§§ 210.145.14 and 210.152.2.  Citations to these statutes are to RSMo Supp. 2005, which is the
version in effect on May 17, 2006, when the Division received the hotline report of child neglect
by Mother.

for the Division's noncompliance that the legislature neither created nor approved, the judgment is vacated and the matter remanded for further proceedings.

## Background

Mother was married to Joseph Frye ("Frye"). Mother and Frye resided together with Mother's three biological children. One of Mother's biological minor children ("J.H.") died May 10, 2006.

The Children's Division received a hotline complaint on May 10, 2006, alleging Frye physically abused J.H. and this abuse resulted in J.H.'s death. On May 17, 2006, the Children's Division received a hotline complaint against Mother, alleging she committed neglect because she knew Frye was abusive toward the three minor children but failed to supervise his conduct concerning them.

On June 27, 2006 (i.e., more than 45 days after receiving the complaint concerning Frye), the Children's Division completed its investigation of Frye and determined that a preponderance of the evidence substantiated the complaint against him. Once this determination was affirmed by the Child Abuse and Neglect Review Board ("Review Board"), Frye's name was added to the central registry. The state also brought criminal charges against Frye for the death of J.H. but later dismissed them.

On June 8, 2006, the Children's Division noted that its investigation into the hotline complaint regarding Mother would be extended beyond 30 days for "good cause" because the Division needed certain reports it had been unable to obtain. The Division noted in its information system additional reasons for delay between June 8 and June 27 but, between June 27 and August 25, no further updates were made. On August 25,

2006, the Children's Division concluded its investigation and determined that a preponderance of the evidence substantiated the hotline complaint that Mother failed to supervise adequately Frye's interaction with J.H. But the Division also determined that the evidence did not substantiate the complaint that Mother failed to supervise Frye around her other two children.

On August 28, 2006, the Children's Division sent a letter to Mother stating that the hotline complaint had been substantiated in part. Even though the Division sent this letter to the wrong address, Mother received actual notice of the Division's determination and timely sought a hearing before the Review Board. After considering Mother's arguments, the Review Board upheld the Division's decision that the evidence substantiated the allegations about Mother's conduct.

Mother then sought *de novo* review of the Board's decision in circuit court pursuant to section 210.152.6. The trial court never reached the question of whether the evidence did – or did not – substantiate allegations of Mother's neglect. Instead, it determined that the Children's Division "lost jurisdiction" to investigate or make a determination regarding the hotline complaint alleging Mother's neglect because the Division failed to comply with the 90-day statutory deadline for investigations set forth in section 210.152.2. On that basis, the trial court entered judgment in Mother's favor and ordered the Division not to include her name on the central registry. The Children's Division appeals and, after transfer, this Court has jurisdiction. Mo. Const. art. V, sec. 10.

3

## Standard of Review

"The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Our review is essentially *de novo*." *Id.* "Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 362-63 (Mo. banc 2012).

## Analysis

After completing its investigation of the hotline complaint alleging child neglect by Mother, the Children's Division determined that some – but not all – of those allegations were supported by a preponderance of the evidence. That determination was upheld by the Review Board. When Mother petitioned the circuit court to review the Review Board's decision, the trial court never reached the question of whether the Board erred in upholding the Division's conclusion that the evidence substantiated the allegations of Mother's neglect. Instead, the trial court decided that the consequence of the Division's failure to comply with the 90-day deadline in section 210.152.2 in Mother's case was that the Division lost all authority to continue its investigation or to make a determination regarding the hotline complaint against mother after the 90th day. The trial court determined that the moment this 90-day deadline passed, the hotline complaint concerning Mother's neglect must be deemed unsubstantiated no matter what the evidence gathered to date by the Division showed or did not show. Accordingly, the

4

trial court entered judgment for Mother and ordered the Division not to list Mother's name on the central registry. This Court disagrees.

## I. Section 210.152.2 Provides No Sanction for Noncompliance, and Courts are Not Authorized to Create One

The 90-day deadline for hotline investigations in section 210.152.2 was imposed by the General Assembly. Accordingly, it is for that body – not the courts – to decide what sanction (if any) is appropriate when the Children's Division fails to meet that deadline in a particular case. Here, the trial court erred by imposing a sanction that barred the Division from taking any action on this hotline complaint after the 90th day because the legislature did not create or approve the use of such a sanction in these circumstances.

Mother insists that the central issue in this case is what the legislature intended by its use of the term "shall" in the 90-day deadline provision in section 210.152.2. Her approach is understandable, but incorrect. "Shall" means "shall." It unambiguously indicates a command or mandate. To suggest any other meaning is to ignore the plain language of the statute. More importantly, there is no reason to debate the sufficiency of this tautology in the present case because no one questions it. The Children's Division does not argue – and this Court does not hold – that "shall" means "may" in section 210.152.2 or that the 90-day deadline in that statute is merely a suggestion and not an obligation. Accordingly, because section 210.152.2 requires that the Division "shall" complete its investigation and notify the perpetrator of its determination within 90 days of receiving a hotline report, the Division has a clear and unequivocal duty to do so.

5

But Mother is not seeking a declaration that the Division has such a duty, nor is she seeking a writ of mandamus to compel the Division to perform that duty. Instead, she contends that, because the Division failed to comply with the 90-day deadline in her case, the Division lost all authority to complete its investigation of the hotline complaint about her, and it lost all authority to make the various determinations regarding the complaint that the Division is required to make under chapter 210. Accordingly, the central issue in this case is not whether "shall" means "shall" but what sanction (if any) the legislature intended to apply when the Division fails to do what section 210.152.2 says it "shall" do.

If, as the trial court held, the legislature intended for the Division to be stripped of all authority to investigate or make a determination regarding a hotline complaint after the 90th day, then section 210.152.2 is a "mandatory statute" and this intention will be enforced. But, if the legislature has not approved this sanction or otherwise indicated that this is the intended consequence of the Division's non-compliance in a given case, then the statute is a "directory statute" and the trial court was wrong in creating this sanction on its own. This is the statutory construction question before the Court; not whether the word "shall" means "shall."

When the legislature imposes a deadline or other mandate, this Court has held that courts have no authority to impose a sanction for non-compliance when the legislature has chosen not to do so. *See Farmers & Merchants Bank & Trust Co. v. Dir. of Revenue*,

6

896 S.W.2d 30, 33 (Mo. banc 1995) ("where the legislature fails to include a sanction for failure to do that which 'shall' be done," courts are not free to impose one).[2]

*Farmers* is merely one of the most recent and most relevant in a long line of decisions that categorize laws as either "mandatory statutes" or "directory statutes."

> Under a general classification, statutes are either mandatory or directory; a determination of their character in this respect is of first importance in their interpretation. ***If mandatory***, in addition to requiring the doing of the things specified, ***they prescribe the result that will follow*** if they are not done; ***if directory, their terms are limited to what is required to be done***.

*Hudgins v. Mooresville Consol. Sch. Dist.*, 278 S.W. 769, 770 (Mo. 1925) (emphasis added). This line of authority is as long as this Court is old. In *St. Louis Cnty. Court v. Sparks*, 10 Mo. 117 (1846), this Court stated:

> It is a rule of construction, that a statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, is directory merely, unless the nature of the act to be performed, or the phraseology of the statute is such, that the designation of time must be considered as a limitation of the power of the officer. *The People v. Allen*, 6 Wend.; *Jackson v. Hooker*, 5 Cowen, 269; 2 Mass. 230.

*Id*. at 121-22 (emphasis added).[3]

---

[2] *See also State v. Tisius*, 92 S.W.3d 751, 770 (Mo. banc 2002) ("where a statute or rule does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory"); *State ex rel. Rogersville Reorganized Sch. Dist. No. R-4, of Webster Cnty. v. Holmes*, 253 S.W.2d 402, 404 (Mo. banc 1952) ("… if nothing is stated regarding the consequence or effect of non-compliance, the indication is all the stronger that it should not be considered mandatory."); *State ex Inf. Mitchell ex rel. Goodman v. Heath*, 132 S.W.2d 1001, 1003 (Mo. 1939) ("If a statute merely requires certain things to be done and nowhere prescribes the result that shall follow if such things are not done, then the statute should be held to be directory."); *State ex Inf. McAllister ex rel. Lincoln v. Bird*, 244 S.W. 938, 939 (Mo. 1922) (same).

[3] This quote and the citations to the New York and Massachusetts decisions that follow it are taken from Justice Theodore Sedgwick's treatise about the interpretation and construction of statutes and constitutional provisions. *See* Theodore Sedgwick, *A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law*, at 320-21

7

In deciding whether a statute is "mandatory" or "directory," however, the relevant statutory construction question is not whether the statute actually imposes an obligation (i.e., whether "shall" means "shall"). If the statute does not impose an obligation, the question never arises. Instead, when (but only when) a statute imposes an obligation, the statutory construction question embodied in the distinction between "mandatory statutes" and "directory statutes" is whether the legislature intended to make all actions that fail to comply with that obligation void or ineffective. This was explained more than a century ago when this Court wrote:

> It is said that to ascertain whether a law is intended to be directory or imperative does not depend so much on the construction of the language of the law as of its application. "The statute is sufficiently clear; *the only point is, what shall be the consequence of a disobedience of its directions*."

*W. v. Ross*, 53 Mo. 350, 354 (1873) (*quoting* Sedgwick, at 369) (emphasis added).

As with any statutory construction question, the answer to whether a statute is "mandatory" or "directory" turns on the language chosen by the legislature. Two examples of when a statute that imposes an obligation will be construed to be "mandatory" are: (a) if the statute explicitly provides what the consequence of non-compliance will be (e.g., that any act performed after the stated deadline or in a manner different than the required method will be void or ineffective); and (b) if the statute explicitly provides that the required action can be taken *only* before the stated

---

(2d ed. 1874) (with notes by John Pomeroy) (referred to herein as "Sedgwick"). Justice Sedgwick was a member of the Continental Congress in 1780, United States Senator in 1798, Speaker of the House of Representatives in 1800, and a member of the Massachusetts Supreme Judicial Court. His treatise, which was one of the touchstones of this Court's early jurisprudence, remains available – and useful – today. *See State v. Honeycutt, 421 S.W.3d 410, 419 (Mo. banc 2013).*

8

deadline or can be performed *only* in the stated manner.  *See, e.g., Ross*, 53 Mo. at 354 ("the legislature has not only by the statute directed what shall be done, but has also declared what consequence shall follow disobedience"); *Greene v. Holt*, 76 Mo. 677, 680 (1882) ("Negative words are imperative.") (*citing* Sedgwick, at 316, 320, and 325).  On the other hand, if a statute imposes an obligation and does not explicitly allow only compliant actions (or explicitly declare non-compliant actions void or ineffective), the statute likely is "directory" and courts are not free to create and impose a sanction that the legislature did not approve.

Here, section 210.152.2 imposes an obligation on the Children's Division to complete its investigation and to make its determination within 90 days of receiving a hotline complaint.  But this statute does not explicitly provide that the Division may only investigate or determine hotline complaints before the 90th day, nor does it explicitly provide that the Division lacks authority to investigate or determine such complaints after the 90th day.  In the absence of such legislative intent, courts have no authority to impose such a sanction on their own.

The lack of statutory approval for a sanction in the event of non-compliance with a statutory obligation, or the lack of any language permitting only acts that are in compliance with that obligation, is an important factor in drawing the important "mandatory" or "directory" distinction.  In *Farmer* and the other cases cited above, this factor was dispositive.  But this Court has noted that it is not the only factor that may be considered.  In *Bauer v. Transitional Sch. Dist. of City of St. Louis*, 111 S.W.3d 405 (Mo. banc 2003), this Court noted cases applying the basic rule that, "where a statute or rule

9

does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory." *Id*. at 408. But the Court also noted that "the presence or absence of a penalty provision is 'but one method' for determining whether a statute is directory or mandatory." *Id.* at 408. The Court's authority for this observation was *Sw. Bell Tel. Co., Inc. v. Mahn*, 766 S.W.2d 443, 446 (Mo. banc 1989), which stated that the "absence of a penalty provision does not automatically override other considerations."[4] Ultimately, whether a statute is mandatory or directory is a "function of context and legislative intent." *Bauer*, 111 S.W.3d at 408 (citing *Farmers*, 896 S.W.2d at 32).

Here, nothing in section 210.152.2, or elsewhere in chapter 210, states that the Children's Division may only investigate or determine hotline complaints before the 90th day or that the Division loses its authority to continue an investigation or make a determination regarding a hotline complaint when the 90-day deadline has come and gone. Instead, section 210.152.2 provides only that:

> Within ninety days after receipt of a report of abuse or neglect that is investigated,[[5]] ***the alleged perpetrator*** named in the report … ***shall be***

---

[4] The example the Court cited in *Mahn* was *Garzee v. Sauro*, 639 S.W.2d 830, (Mo. banc 1982), in which the due process principles in *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) justified the conclusion that a notice statute was mandatory rather than directory despite the legislature's failure to include any express sanctions for non-compliance. *Mahn*, 766 S.W.2d at 446 (citing *Garzee*, 639 S.W.2d at 832). Finally, relying on this language in *Mahn*, a plurality of this Court in *State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009), held that a criminal conviction resulting from a violation of the statutory requirement that prior offender status be pleaded and proved before the case is submitted to the jury could not be affirmed merely because the statute did not expressly state the proper sanction for non-compliance.

[5] The phrase limiting the statute's application to each report "that is investigated" is a reference to the fact that, when each report is received, the Division must decide whether to investigate or conduct a family assessment. *See* §§ 210.109.2 and 210.115.4.

*notified* in writing of *any determination* made by the division based on the investigation.

§ 210.152.2 (emphasis added).

Unable to identify any language in section 210.152.2 that creates or approves the sanction imposed by the trial court in this case, Mother relies on section 210.145.14, which states:

> *The division shall complete all investigations within thirty days,* unless good cause for the failure to complete the investigation is documented in the information system*. If the investigation is not completed within thirty days*, the information system shall be updated at regular intervals and upon the *completion of the investigation.* The information in the information system shall be updated to reflect any subsequent findings, including any changes to the findings based on an administrative or judicial hearing on the matter.

§ 210.145.14 (emphasis added). By its plain language, this statute says nothing about the 90-day deadline in section 210.152.2. More importantly, section 210.145.14 does not even approve a sanction for cases in which the Division fails to comply with the statutory obligation to note "good cause" when it exceeds the 30-day deadline in that statute. Accordingly, section 210.145.14 does not support the trial court's conclusion that the legislature intended for the Children's Division to lose all authority to investigate or make determinations regarding a hotline complaint after the 90th day.

Not only is the trial court's decision not supported by any express language in sections 210.145.14 or 210.152.2 (or elsewhere in chapter 210), it is contrary to the obvious intent of the legislature expressed throughout the Child Abuse Act. The trial court's decision was based on its conclusion that the Children's Division loses all authority to continue an investigation or make a determination after the 90th day. But the

11

scope of the Children's Division's authority to do these things is not the subject of section 210.152.2. Instead, that authority is established in section 210.109.2:

> The child protection system shall promote the safety of children and the integrity and preservation of their families ***by conducting investigations*** or family assessments and providing services ***in response to reports of child abuse or neglect***.

§ 210.109.2 (emphasis added).

Nothing in this statute purports to limit the Division's authority to a 90-day window, and nothing suggests that such a limitation is imposed (or reasonably may be inferred) elsewhere in chapter 210. If the legislature intended for the grant of investigative authority in section 210.109.2 to be contingent on compliance with the deadlines in sections 210.152.2 and 210.145.14, it would have said so. It did not. The absence of such a limitation weighs strongly against the trial court's conclusion that the legislature intended for the Division to be stripped of its authority the moment it fails to comply with the 90-day deadline in section 210.152.2.

The trial court's decision also fails to credit the importance that the legislature attaches to the Children's Division's investigative role. The "determination" referred to in section 210.152.2 is a "determination made by the division based on the investigation," not a default determination that a court says must be deemed to occur because the Division loses all authority to act after the 90th day. In addition, under section 210.145.14 (which is the legislature's ***only*** explicit statement about the permissible length of the Division's investigations), the Division is explicitly permitted to extend an investigation

12

for "good cause."[6]  Not only is there no restriction on the length of such extensions, the statute explicitly provides that all extended investigations should be pursued to "completion."  § 210.145.14.  This provision would make no sense if, as the trial court held, the Division loses all authority to investigate or make a determination regarding a hotline complaint after the 90th day and all unresolved complaints must be deemed unsubstantiated at that time.[7]

Section 210.152.2, and the whole of the Child Abuse Act in chapter 210, is a remedial statute, and such statutes are to be "***construed so they provide the public protection intended by the legislature***."  *Ross v. Dir. of Revenue*, 311 S.W.3d 732, 735 (Mo. banc 2010) (emphasis added).  In *Jamison v. Dep't. of Social Services,* 218 S.W.3d 399, 410 (Mo. banc 2007), this Court recognized that the legislative purpose behind the Child Abuse Act is to protect the victims of child abuse or neglect and any other children with whom the perpetrator may come into contact.  *See* § 210.109.2 (purpose of the Act is to "promote the safety of children … by conducting investigations … and providing

---

[6]  Mother does not challenge the sufficiency of the good cause identified by the Division and recorded in its information system.  Nor would such a claim have succeeded, for the reasons set forth in the companion case *Williams v. Department of Social Services*, ___ S.W.3d ___ (Case No. 93653) (Mo. banc 2014).  The judicial review authorized by section 210.152.6 extends only to the decision made by the Board and, under section 210.152.4 and .5, the Board is authorized only to decide whether the Division's determination is supported by a preponderance of the evidence and whether it is against the weight of the evidence.

[7]  Not only does it appear that the Child Abuse Act values complete investigations and well-informed determinations over arbitrary deadlines, but there also is no reason to conclude that these deadlines were included for the benefit of alleged perpetrators.  It seems far more likely that the deadlines were intended to protect the present (and potential future) victims of child abuse or neglect by requiring prompt action and resolution of each hotline complaint.  This makes the trial court's imposition of a sanction that sacrifices that purpose to the interests of a perpetrator about whom the allegations already have been substantiated even more out of step with the legislative intent behind the Act as a whole.

13

services in response to reports of child abuse or neglect"). Accordingly, the question of what sanctions (if any) the legislature has created or approved for use in the event the Children's Division fails to comply with the 90-day deadline in section 210.152.2 must be answered in the context of – and in a way that is faithful to – this remedial purpose. The trial court's decision in this case fails to do so.

By imposing a sanction that deprives the Children's Division of its authority to investigate or determine hotline complaints after the 90th day, the trial court's decision subordinates the Act's purpose of protecting victims of child abuse and neglect to the interests of alleged perpetrators. The legislature, of course, is free to make that choice and impose such a sanction when the Division fails to comply with the 90-day deadline. But that choice belongs to the legislature, not the courts, and nothing in section 210.152.2 (or else where in the Act) indicates that the legislature intended to make that choice or impose that sanction. Instead, by requiring every determination that the Division makes to be "based on the investigation," section 210.152.2 demonstrates the legislature's intention that the best way to protect the victims of child abuse and neglect is to value complete investigations over arbitrary deadlines.

The basic premise of Mother's argument is that the legislature's intention to strip the Children's Division of all authority to investigate or determine hotline complaints after the 90th day is implicit in the legislature's use of the word "shall" in section 210.152.2 when it imposed the 90-day deadline. In other words, because the legislature imposed this mandatory deadline, Mother contends that the Court should infer that the legislature meant to rescind the Division's otherwise unlimited authority to investigate

14

and determine hotline complaints the moment the deadline passes. This is precisely the argument this Court rejected in *Farmers*.

In *Farmers*, the director of revenue denied a taxpayer's request for a refund. Conceding that the director has authority to decide whether to refund claims generally, the taxpayer claimed the Director lost that authority by failing to comply with a statutory requirement that the determination must be made within 120 days of the refund request. *Farmers*, 896 S.W.2d at 32-33. The taxpayer argued that because the statute said the Director "shall" give such a notice, the legislature must have intended for the Director to lose all authority to refuse refund requests after 120 days. As a result, the taxpayer argued that any request still pending after that deadline must be deemed approved. *Id.* at 32. The Court not only rejected that argument as inconsistent with prior cases holding that the legislature's failure to include an express sanction for non-compliance precludes courts from creating one, it also pointed out the absurd consequences that such a result would likely produce:

> [W]e presume that taxpayers are better served by well-considered, though tardy responses to their claims for refund by the Director. Given time to contemplate, the Director may decide in the taxpayer's favor, avoiding the necessity and expense of further litigation. ***If Farmers' reading of the statute were correct, we imagine the Director would be forced to issue blanket denials of all claims for refund that reach the 120–day stage*** in order to avoid the automatic refunds Farmers claims the statute demands.

*Id.* at 33 (emphasis added). *See also Sparks*, 10 Mo. at 122 (noting: "It would be strange if a statute specifying an early day at which an act must be done with a view to its speedy execution, should be construed that the act ***could not be done at all after*** the day when

15

the necessity for its performance is as great, if not greater, afterwards than before.") (emphasis added).

Using this same logic, it is not difficult to foresee the effects if the Court were to affirm the trial court's ruling in this case. Faced with a 90-day deadline and no authority to investigate or determine hotline complaints after that date, the Division will have a great incentive to stop each investigation as soon as the allegations of abuse or neglect are substantiated (even minimally). This would allow the Division to communicate its decision to the alleged perpetrator prior to the deadline and keep looking for evidence to support the Division's determination in the hopes that it could be used to supplement the record before the Board and/or during judicial review. As in *Farmers*, such a result serves no one.

The rationale for the "mandatory" vs. "directory" dichotomy, and the purpose served by that analysis, is to ensure that decisions regarding what sanctions (if any) are appropriate when a party fails to comply with a statutory deadline or other obligation are *legislative* decisions – no more or less than the decision whether to impose such an obligation at all. Here, the choice of what sanction (if any) to apply when the Children's Division fails to comply with the 90-day deadline in section 210.152.2 does not belong to the courts any more than it is up to the courts to decide whether to impose a deadline to begin with. Both choices belong exclusively to the legislature. Here, the trial court's decision runs afoul of this rule because nothing in section 210.152 (or in section 210.145 or elsewhere in the Child Abuse Act) suggests that the legislature intended to strip the Division of all authority to investigate and determine hotline complaints after the 90th

day, or to require that all pending complaints be deemed unsubstantiated at that time regardless of the evidence in hand or in prospect. Accordingly, the judgment is vacated and the case remanded for further proceedings on Mother's petition. [8]

## II. A Sanction Requiring Reports to be Deemed Unsubstantiated after 90 Days is Not Required to Protect Mother's Due Process Rights

Mother claims that the Children's Division's failure to comply with the 90-day deadline in section 210.152.2 violated her constitutional rights to due process and that this violation justifies the trial court's decision to impose the sanction it did even though it was not approved by the legislature. This claim lacks merit.

In *Jamison*, this Court held that constitutional rights to due process protect against deprivation, not investigation, and that due process is satisfied for purposes of the Child Abuse Act and the central registry when an alleged perpetrator is given notice and an opportunity to be heard before his or her name can be listed in that registry. *Jamison*, 218 S.W.3d at 410. Here, despite the Division's determination that some of the allegations of child neglect by Mother were substantiated, her name never has been included in the central registry. She has suffered no deprivation of a property or liberty interest to date, and, as a result, her hearing before the Board and the *de novo* judicial

---

[8] During the 2013 legislative session, the General Assembly passed bills amending sections 210.145 and 210.152. As of the date of this opinion, however, the fate of these bills is uncertain because the Governor has not vetoed or approved these bills and the time for doing so has not expired. Because the Court's decision is based on the law in effect at the time of the events at issue, these amendments would not have been controlling in this case even if these bills had been in effect at the time of this decision. But it is worth noting that these amendments do not address what sanction (if any) the legislature intends to be imposed when the Children's Division fails to comply with the deadlines in these statutes and, therefore, these amendments would not have changed the analysis in this case even if they had been applicable.

review of the Board's decision are exactly the sort of pre-deprivation protections that

*Jamison* holds fully satisfy the demands of due process.

Whether an individual has a due process right to control the length or breadth of

an administrative investigation is no longer an open question:

> The opinion of the Court in *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct.
> 1502, 4 L.Ed.2d 1307 (1960), leaves no doubt that neither the Due Process
> Clause of the Fifth Amendment nor the Confrontation Clause of the Sixth
> Amendment is offended when a federal administrative agency, without
> notifying a person under investigation, uses its subpoena power to gather
> evidence adverse to him. ***The Due Process Clause is not implicated under
> such circumstances because an administrative investigation adjudicates
> no legal rights*** ….

*S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (emphasis added, citations

omitted).

In *Artman v. State Bd. of Registration for Healing Arts*, 918 S.W.2d 247, 251 (Mo.

banc 1996), this Court relied on *O'Brien* to hold that due process protections are not

necessary during a state administrative agency's investigation because no legal rights are

being adjudicated. Under *Artman* and *O'Brien*, therefore, Mother has no due process

right to be free from the Division's investigation of the hotline report regarding her and

no due process right to have such an investigation start or stop at any particular time. In

fact, even if section 210.152.2 imposes a 90-day deadline on such investigations, a

"violation of state procedures does not automatically equate to a violation of due process

rights." *Mann v. Vogel*, 707 F.3d 872, 881-82 (7th Cir. 2013).

Here, Mother does not (and cannot) claim she suffered any actual prejudice by the

13-day delay between the 90-day deadline that she claims terminates the Division's

authority to determine the hotline complaint against her and the date she received notice of the Division's determination that some, but not all, of the allegations in that complaint were substantiated by the evidence gathered in its investigation. For example, she does not claim that her ability to defend against these allegations was compromised by this delay, or that the Division made the wrong determination in her case as a result of this delay, or that the Division's delay was motivated by animus or a desire to torment her. Though it may be conceivable that an investigation could continue so long that such prejudice could occur, that is not the case here.

This lack of prejudice not only dooms Mother's constitutional claim, it underscores the weakness of the claim rejected in the preceding section of this opinion. In *State ex rel. State v. Parkinson*, 280 S.W.3d 70, 76 (Mo. banc 2009), this Court refused to apply a sanction for an administrative agency's failure to do that which a statute said it "shall" do. In so holding, the Court noted the absence of prejudice to the individual seeking that sanction. *Id.* at 77. *See also Garzee*, 639 S.W.2d at 832 (statute requiring that notice of foreclosure sale "shall" be mailed voided the sale of homeowner's property that occurred without such notice – even though such a sanction was not explicitly approved in the statute – because the lack of actual notice was so prejudicial to homeowner that it violated due process); *Schlafly v. Baumann*, 108 S.W.2d 363, 366 (Mo. 1937) (statute stating that tax sales of land "shall" occur on a particular day precluded sales on other days even though such a sanction was not explicitly provided because "[d]ue diligence on such date should avail land owners of information

19

concerning any proceedings against their real estate for the collection of delinquent taxes").

The lack of prejudice to the alleged perpetrators when the Children's Division extends its investigation beyond 90 days before it decides whether a preponderance of the available evidence does (or does not) substantiate the allegations in the hotline complaint may explain why the legislature chose not to approve the sanction imposed by the trial court here. Until the Division completes its investigation of a hotline report of child abuse or neglect, the Child Abuse Act recognizes that all interests – those of the child, the alleged perpetrator, the parents, and society as a whole – are the *same*. At that point, what matters most is that the Division makes a fully informed and accurate determination as to whether abuse or neglect was committed and, if so, by whom.

Mother may claim an interest in truncating that investigation now, but that is only because she knows what the Division's determination was in the end. If the Division had discovered evidence on day 99 that had exonerated her completely, every interest – including Mother's – would have been served by that delay. It does not matter that the Division did not find that sort of evidence here; the legislature makes its decisions without the benefit of such hindsight.

It is only after the Division completes its investigation and notifies the relevant parties of its determination that the various interests can diverge. If the allegations are substantiated, the alleged perpetrator has an interest in challenging the Division's determination before he or she suffers the loss of liberty or property that may result from being listed in the central registry. *Jamison* and sections 210.152.4 and 210.152.6 protect

20

that interest with pre-deprivation administrative review and *de novo* judicial review, and the legislature provides such procedures to ensure that no one is listed in the central registry unless a preponderance of the evidence substantiates their acts of child abuse or neglect **and** that everyone whose acts are substantiated will be listed in the registry.

The trial court's ruling, if affirmed, would allow an alleged perpetrator to avoid being listed in the central registry on a basis that the legislature did not authorize and never could have envisioned. By imposing such a sanction, this ruling destroys the separation between the distinct pre- and post-determination phases that the legislature intended and the Child Abuse Act provides. Because such a rule would force the Division to decide some cases sooner and with less information than it should, it fails to protect the interests of those current and future victims of child abuse or neglect as well as the interests of those falsely accused of such acts.

## Conclusion

For the reasons stated above, the Court vacates the judgment in favor of Mother and remands this case.

_____<br>
PAUL C. WILSON, JUDGE

Russell, C.J., Breckenridge, and Stith, JJ., concur; Draper, J., dissents in separate opinion filed; Fischer and Teitelman, JJ., concur in opinion of Draper, J.

21



# SUPREME COURT OF MISSOURI
## en banc

MELODY FRYE,                       )

                                  )

        Respondent,           )

                                    )

vs.                              )     No. SC93471

                                  )

RONALD J. LEVY, DIRECTOR,     )
STATE OF MISSOURI,             )
DEPARTMENT OF SOCIAL SERVICES, )
CHILDREN'S DIVISION,         )

                                  )

        Appellant.            )

## DISSENTING OPINION

I respectfully dissent from the principal opinion in that I believe the trial court properly entered judgment in favor of Melody Frye (hereinafter, "Mother"), ordering Mother's name to be removed from the central registry of child abuse and neglect perpetrators because the Children's Division of the Missouri Department of Social Services (hereinafter, "the Children's Division") failed to comply with the applicable time limitations set forth in sections 210.145 and 210.152, RSMo Supp. 2005. The Children's Division failed to comply with the statutory time limits, which I believe divested it of authority to continue to take action.

The Children's Division is a statutory creation, and its authority is limited to that granted to it by the legislature. *State ex rel. Missouri Pub. Defender Comm'n v. Waters*,

370 S.W.3d 592, 598 (Mo. banc 2012); *see also In re C.W.,* 211 S.W.3d 93, 97 (Mo. banc 2007).   Accordingly, it is constrained by its articulated statutory authority.  *Hessel v. Missouri Dept. of Social Services, Children's Div.*, 400 S.W.3d 813, 816 (Mo. App. E.D. 2013) (*citing State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*, 366 S.W.3d 493, 496 (Mo. banc 2012)).   Looking at the entirety of our statutory scheme, I believe the legislature intended only to provide the Children's Division ninety days in which to take action against an alleged perpetrator.  Since the Children's Division failed to act within that statutorily articulated timeframe, it had no authority to place Mother's name on the central registry.

Section 210.145.14 provides that after receiving a report of abuse or neglect, the Children's Division "shall complete all investigations within thirty days, unless good cause for the failure to complete the investigation is documented in the information system.  If the investigation is not completed within thirty days, the information system shall be updated at regular intervals and upon the completion of the investigation." Section 210.152.2 provides that "[w]ithin ninety days after receipt of a report of abuse or neglect that is investigated, the alleged perpetrator …, shall be notified in writing of any determination made by the [Children's D]ivision based on the investigation."   This section then delineates that "the notice shall advise either:

> (1) That the [Children's D]ivision **has** determined … that abuse or neglect exists and that the division shall retain all identifying information regarding the abuse or neglect; that such information shall remain confidential and will not be released except to law enforcement agencies, prosecuting or circuit attorneys, or as provided by section 210.150; that the alleged perpetrator has sixty days from the date of the receipt of the notice to seek reversal of the [Children's D]ivision's determination through a review by

2

the child abuse and neglect review board as provided in subsection 3 of this section; or

(2) That the [Children's D]ivision **has not** made a probable cause finding or determined by a preponderance of the evidence that abuse or neglect exists."

Section 210.152.2 (emphasis added). The legislature did not bestow a provision for an extension of time for further investigation in this section as it did in section 210.145.14.

The legislature also compels the Children's Division to notify the alleged perpetrator with the written description of the investigation process once it opens an investigation. Section 210.183.1. Section 210.183.1 contains language drafted by the legislature explaining the process of the investigation to the alleged perpetrator by putting sections 210.145 and 210.152 into plain words for the public. The Children's Division's notification letter must be drafted in substantially the same form as set forth in section 210.183.1. This section states that the Children's Division "shall make every reasonable attempt to complete the investigation within thirty days." If the investigation is not completed within thirty days, "within ninety days **you will receive** a letter from the [Children's] Division which will inform you of one of the following:

(1) That the [Children's] Division has found insufficient evidence of abuse or neglect; or

(2) That there appears to be by a preponderance of the evidence reason to suspect the existence of child abuse or neglect in the judgment of the [Children's] Division and that the [Children's] Division will contact the family to offer social services."

3

Section 210.183.1 (emphasis added). This notification language tracks the statutory language, delineating the Children's Division's authority, in sections 210.145.14 and 210.152.

Justice Sedgwick concisely sets forth the general rules of interpreting statutes and determining when a statute should be treated as directory:

> The intention of the Legislature should control absolutely the action of the judiciary; where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to the wisdom or justice of the particular enactment.
>
> The means of ascertaining that intention are to be found in the statute itself, taken as a whole with all its parts,-- in statutes on the same subject, antecedent jurisprudence and legislation, contemporaneous and more recent exposition, judicial construction and usage; and to the use of these means, and these alone, the judiciary is confined. No other extrinsic facts are in any way to be taken into consideration.
>
> It is not until these means fail, and until the attempt to ascertain the legislative intent is hopeless, that the judiciary can with propriety assume any power of construing a statute, strictly or liberally, with reference either to the particular character of the statute, or to their own ideas of policy or equity. Where the meaning of the statute, as it stands, is clear, they have no power to insert qualifications, engraft exceptions, or make modifications, under the idea of providing for cases in regard to which the Legislature has omitted any specific provisions.

Theodore Sedgwick, *A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law*, at 325-26 (2d ed. 1874) (hereinafter, "*Sedgwick*").[1]

---

[1] The principles expounded upon in Sedgwick's treatise, while applicable, are difficult for citizens to locate; the Missouri's Supreme Court library does not maintain a copy of any of his treatises for citizens. However, this Court still recognizes his writing as influential

4

Section 210.152.2 provides that "[w]ithin ninety days after receipt of a report of abuse or neglect that is investigated, the alleged perpetrator …, shall be notified in writing of any determination made by the division based on the investigation." This section then delineates "the notice shall advise either:

> (1) That the [Children's D]ivision **has** determined … that abuse or neglect exists and that the division shall retain all identifying information regarding the abuse or neglect; that such information shall remain confidential and will not be released except to law enforcement agencies, prosecuting or circuit attorneys, or as provided by section 210.150; that the alleged perpetrator has sixty days from the date of the receipt of the notice to seek reversal of the [Children's D]ivision's determination through a review by the child abuse and neglect review board as provided in subsection 3 of this section; or

> (2) That the [Children's D]ivision **has not** made a probable cause finding or determined by a preponderance of the evidence that abuse or neglect exists."

Section 210.152.2 (emphasis added).

The legislature did not bestow a provision for an extension of time for further investigation in this section as it did in section 210.145.14. The legislature also mandated that the Children's Division must inform the alleged perpetrator within ninety days of one of two possible outcomes.

In this case, the initial hotline call against Mother occurred on May 17, 2006. The Children's Division was charged with conducting an investigation into the allegations. Section 210.145.14 provides that after receiving a report of abuse or neglect, the Children's Division "shall complete all investigations within thirty days, unless good

---

in our decision making. *See State v. Honeycutt*, 421 S.W.3d 410, 419-20 (Mo. banc 2013).

5

cause for the failure to complete the investigation is documented in the information system. If the investigation is not completed within thirty days, the information system shall be updated at regular intervals and upon the completion of the investigation."

Within the initial thirty days contemplated by section 210.145.14, the Children's Division informed Mother on June 8, 2006, that its investigation would be delayed for "good cause" because the reports it needed to make its final determination were not available. The Children's Division continued to update the information system until June 27, 2006. After the update on June 27, 2006, there were no updates in the information system until August 25, 2006.

On August 28, 2006, after the expiration of the ninety-day period delineated in section 210.152.2, the Children's Division provided Mother with its decision, finding she neglected J.H.. The Children's Division concedes the notification of its decision occurred beyond the ninety-day time frame.

The principal opinion curtails the actual analysis that should be performed by this Court when attempting to determine whether a statute is mandatory or directory by only noting the lack of a penalty provision within section 210.152.2. "Directory provisions are not intended by the legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them." *State ex rel. Ellis v. Brown*, 33 S.W.2d 104, 107 (Mo. banc 1930) (*quoting* 25 R. C. L. Sec. 14 pp. 766, 767).[2] Our "courts recognize that the term ['shall'] is frequently

---

[2] The principal opinion neglects to look at the other statutory provisions within the same act, covering the same procedures and authority granted to the Children's Division,

6

used carelessly and indiscriminately, and they have not hesitated to hold that the intent of the legislative enactment will prevail over the literal sense of its terms." *Howard v. Banks*, 544 S.W.2d 601, 604 (Mo. App. St. Louis Dist. 1976). "There is no absolute or universal rule by which statutory provisions may be distinguished and classified as mandatory or directory." *State ex rel. Hopkins v. Stemmons*, 302 S.W.2d 51, 53 (Mo. App. Spring. Dist. 1957). "In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished." *Brown*, 33 S.W.2d at 107 (*quoting* 25 R. C. L. Sec. 14 pp. 766, 767); *see also Hopkins*, 302 S.W.2d at 53; *State ex rel. Rogersville Reorganized School Dist. No. R-4, of Webster Cnty.*, *v. Holmes,* 253 S.W.2d 402, 404 (Mo. banc 1952) ("In determining whether either of the provisions of the schedule with which each relator failed to comply is mandatory or directory, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject legislation and the general object intended to be accomplished.") (internal quotation omitted).

Since the Children's Division's authority is promulgated by statute, this Court must engage in statutory analysis to determine fully the extent of the authority delegated to the Children's Division. The principal opinion's decision to re-cast the statutory construction question to fit its conclusion allows the author seemingly to negate the

thereby failing to give any meaning to every statutory provision enacted by our legislature.

7

legitimacy of any opposing argument. This is a tactic of advocacy that is better employed by trial counsel rather than the judiciary, whose duty it is to address honestly and fully each issue timely and appropriately presented by the parties on appeal. Whether "shall" means "shall" is indeed a major issue in the resolution of this cause.

"As with all matters of statutory interpretation, determining if the word 'shall' is mandatory or directory requires courts to review the context of the statute and to ascertain legislative intent*." State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009). When engaging in statutory construction, the primary purpose is to ascertain the legislature's intent from the language used and to give effect to that intent if possible. *Beard v. Missouri State Employees' Retirement System*, 379 S.W.3d 167, 169 (Mo. banc 2012). This Court presumes the legislature intended every word, clause, sentence, and provision of a statute to have effect and did not insert superfluous language into the statute. *City of Shelbina v. Shelby County*, 245 S.W.3d 249, 252 (Mo. App. E.D. 2008). "The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and [to] give meaning to the statutes." *Lewis v. Gibbons*, 80 S.W.3d 461, 465 (Mo. banc 2002) (internal quotations omitted).

"Provisions of an entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized." *Chester Bross Const. Co. v. Missouri Dept. of Labor and Indus. Relations, Div. of Labor Standards*, 111 S.W.3d 425, 427 (Mo. App. E.D. 2003) (quoting *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo. App. E.D. 2000)). Statutory provisions relating to the same subject matter "must be considered in context and sections of the statutes in *pari materia*, as well as cognate

8

sections, must be considered in order to arrive at the true meaning and scope of the words." *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579, 584 (Mo. banc 2012) (quoting *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009)); *see also Sedgwick* at 209 ("It is well settled, that in construing a doubtful statute, and for the purpose of arriving at the legislative intent, all acts on the same subject-matter are to be taken together and examined, in order to arrive at the true result.") This allows the legislation to be read consistently and harmoniously. *Crawford v. Div. of Employment Sec.*, 376 S.W.3d 658, 664 (Mo. banc 2012). "The rule that statutes in *pari materia* are to be consulted for the construction of each other, holds good, though some of the statutes may have expired, or even been repealed, and whether they are referred to or not." *Sedgwick* at 212. Statutes are enforced as they are written, not as they might have been written. *Turner v. School Dist. of Clayton*, 318 S.W.3d 660, 667 (Mo. banc 2010). Further, this Court presumes the legislature is aware of the existing law. *Id.*

Our legislature created the statewide child abuse and neglect registry to "promote the safety of children … by conducting investigations … and providing services in response to reports of child abuse or neglect." Section 210.109.2; *Jamison v. State, Dept. of Social Services, Div. of Family Services*, 218 S.W.3d 399, 402-03 (Mo. banc 2007). The central registry is a non-public list of people who committed child abuse or neglect. Sections 210.110(3) and 210.150.2. The central registry provides "a means to protect both victims of child abuse and other children with whom a perpetrator of abuse or neglect might come into contact by ensuring that information about cases of abuse is available to individuals and entities responsible for caring and protecting children." *Pope*

9

*v. Child Abuse and Neglect Review Bd.*, 309 S.W.3d 362, 366 (Mo. App. E.D. 2010). There is limited access to the central registry. *Hessel*, 400 S.W.3d at 817 n.2; *see* section 210.150.

When a hotline call is received, the Children's Division is charged with opening a thirty-day investigation. Section 210.145.14. The legislature clearly recognized that some investigations may have "good cause" to be extended beyond the initial thirty-day investigation period because the legislature included the qualifying language of "good cause." *Id.* The legislature promulgated a procedure, requiring the Children's Division to update the database with its progress on the investigation after the initial thirty-day period. *Id.* The legislature also required that the alleged perpetrator be given written notice of the investigative procedure, which states that the investigation should be completed within thirty days but may be extended out to ninety days. There is no additional provision for a lengthier investigation. Section 210.183.1. After the initial investigatory period, the legislature directs that the Children's Division *within ninety days shall* provide notice to the alleged perpetrator that either the Children's Division finds by a preponderance of the evidence that abuse or neglect exists or that the Children's Division has not determined by a preponderance of the evidence that abuse or neglect exists. Section 210.152.2.

Section 210.152.2 does not state what consequence will ensue if the Children's Division fails to provide the alleged perpetrator a written determination of its investigation within ninety days. The principal opinion believes that, because there is no delineated consequence from failing to inform an alleged perpetrator of its decision

10

within ninety days, section 210.150.2 should be construed as only a directory statute and the Children's Division does not need to comply with the statutory deadline.[3]

In support of this proposition, the principal opinion cites *Farmers & Merchants Bank & Trust Co. v. Dir. of Revenue, State of Mo.*, 896 S.W.2d 30, 33 (Mo. banc 1995), to justify its decision that one may merely look at a statute and determine the presence or absence of a penalty provision to determine whether a statute is mandatory or directory. In *Farmers*, this Court recognized "[w]hether the statutory word 'shall' is mandatory or directory is a *function of context*." *Id.* at 32 (emphasis added). This Court in *Farmers* only needed to analyze a single statute at issue—this is a stark contrast to the issue in this case wherein the provisions at issue are clearly a part of an interlinking act.

While the principal opinion recognizes the proposition in *Farmers* that the presence of a penalty provision is not the only dispositive factor in determining whether a statute is mandatory or directory, it fails to engage in any statutory analysis in this case beyond the limited observation of noting there is not a penalty provision. (See slip op. at 9). This curtailed and simplistic analysis is inappropriate.

When engaging in statutory analysis, this Court consistently recognizes the requirement to consider other statutes with related or similar subject matter to illuminate the meaning of the statute at issue. *BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo. banc 2012). "[W]hen the same or similar words are used in different places within

---

[3] This Court has found reversible error by the circuit court in a termination of parental rights hearing when it failed to comply strictly with section 211.455.3, a section that includes the word "shall" but does not include a penalty provision. *In re C.W.*, 21 S.W.3d at 98 (abrogated on other grounds by *In re B.H.*, 348 S.W.3d 770 (Mo. banc 2011)). *See also In re A.H.*, 169 S.W.3d 152, 158 (Mo. App. S.D. 2005) (same).

the same legislative act and relate to the same or similar subject matter, then the statutes are *in pari materia* and should be construed to achieve a harmonious interpretation of the statutes." *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc 2012) (quoting *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992)); *see also BASF Corp.*, 392 S.W.3d at 444; *Crawford*, 376 S.W.3d at 664, and *Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 122 (Mo. banc 2014). Further, the words in a statute "must be considered in context and sections of the statutes *in pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Harpagon MO, LLC*, 370 S.W.3d at 584 (quoting *So. Metro. Fire Prot. Dist.*, 278 S.W.3d at 666); *see also Goerlitz v. City of Maryville*, 333 S.W.3d 450, 458 (Mo. banc 2011). The principal opinion fails to look to any other statute or cognate section to arrive at the true meaning of the statute. The principal opinion simply ignores our basic tenets of determining the true intent of our legislature.

If section 210.152.2 were to be read in isolation, the "shall" without more could be construed as directory because there is no delineated consequence for failing to meet the ninety-day deadline. However, by reading section 210.152 in *pari materia* with sections 210.145 and 210.183, looking at the entire legislative act, and harmonizing its provisions, it is clear the legislature intended the language to be mandatory. *See Chester Bross*, 111 S.W.3d at 427; *Garzee v. Sauro*, 639 S.W.2d 830, 832 (Mo. 1982) (finding a genuine issue of fact remained when reconciling two statutes regarding giving notice for a real estate sale, and stating, "giving the statute a directory meaning would imply that the publication of notice of foreclosure in section 141.430 satisfies the notice requirements

12

for in rem proceedings under the due process clause of the Missouri and United States constitutions.… [W]e cannot interpret section 141.440 as directory only.")

The Children's Division argues this Court should **infer** it has the authority to extend the ninety-day limit set forth in section 210.152 for written notification of an investigation's outcome, if "good cause" exists.[4] The Children's Division asserts that there is "good cause" to continue its investigation because it seeks to protect Missouri's children. While this seems a laudable goal, the Children's Division is a statutory creature and is vested only with the express authority bestowed to it by our legislature, which protects all of our citizenry.

Yet, the principal opinion states that to enforce the written statutory timeframe would serve no one because the Children's Division would stop its investigation as soon as allegations are substantiated. The principal opinion's willingness to allow an administrative agency to continue any investigation in perpetuity will only be a disservice to those it is charged to protect. At no time prior to the Children's Division substantiating an allegation of abuse are children protected. Until an investigation is completed and a perpetrator is listed on the central registry, that perpetrator is at liberty to have continued free access to children. Missouri's children are not protected from those who seek to harm them by a lengthy investigation process. Had the legislature wished to allow the Children's Division to have an unlimited amount of time to keep investigations

---

[4] The Children's Division raises its "good cause" argument for the first time to this Court. Rule 83.08(b).

13

about alleged perpetrators open, as argued by the principal opinion, it could have placed the same "good cause" language in section 210.152.2.[5]

Similarly, Section 210.183.1 states that the Children's Division will make every reasonable effort to complete the investigation within thirty days, but that *"[w]ithin ninety days you will receive a letter from the [Children's] Division which will inform you of"* its decision. (Emphasis added). This statutory language supports interpreting "shall" in section 210.152 as the legislature's intent to create a mandatory directive and not allow the Children's Division to rest on its laurels rather than pursuing every investigation to a rapid conclusion to protect Missouri's children.[6] Rather than subordinating the Act's purpose by granting unlimited, unchecked, boundless inquiries as suggested by the principal opinion, the better interpretation reinforces the time limitations set forth by our legislature to remove an alleged predator swiftly and rapidly from the midst of innocent children.

Finally, this Court notes that the legislature modified section 210.145.14, RSMo Supp. 2007, and section 210.152, RSMo Supp. 2011. Statutory amendments can further elucidate the legislature's intent. *City of Columbia v. Henderson*, 399 S.W.3d 493, 497 (Mo. App. W.D. 2013); *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating,*

---

[5] An alleged perpetrator has no due process rights during the course of the Children's Division's limited investigation. *Jamison*, 218 S.W.3d at 410. Providing the Children's Division with an unlimited amount of time to open files about and investigate alleged perpetrators is tantamount to authorizing an unlimited investigation with no protection for Missouri children.

[6] The central registry is designed not only to protect children within families but also to protect children who are entrusted to others for care in a daycare or school setting. A lengthy delay in adding a perpetrator's name to the central registry only allows that perpetrator more access to children, thereby further endangering all children.

14

*L.L.C.*, 248 S.W.3d 101, 109 (Mo. App. W.D. 2008). "When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

Section 210.145.14, RSMo Supp. 2007, was amended to provide that in addition to extending an investigation for more than thirty days for "good cause" that "[i]f a child involved in a pending investigation dies, the investigation shall remain open until the [Children's D]ivision's investigation surrounding the death is completed."

The legislature made it clear that the death of a child permits the Children's Division's investigation to continue indefinitely until its conclusion. Were the term "shall" to be merely directory, there would have been no need to legislate that an investigation could extend indefinitely in only one circumstance. This amendment to the statute is further evidence that the legislature intended to treat the death of a child differently from all other cases of alleged abuse and neglect by extending the investigatory time indefinitely. The plain language of the statute in this case demonstrates that the legislature intended to limit the time for which the Children's Division could conduct an investigation for abuse or neglect.

Our legislature added subsection 3 to section 210.152 in 2011, allowing the Children's Division to reopen a case

> for review at the request of the alleged perpetrator, the alleged victim, or the office of the child advocate if new, specific, and credible evidence is obtained that the [Children's D]ivision's decision was based on fraud or misrepresentation of material facts relevant to the [Children's D]ivision's decision and there is credible evidence that absent such fraud or misrepresentation the [Children's D]ivision's decision would have been different.

15

This further clarifies the legislature's intent to only provide the Children's Division a maximum of ninety days to complete its investigation and notify the alleged perpetrator of its decision. The amendment now demonstrates that the investigation may be reopened to further protect children should there be new, specific, credible evidence that the Children's Division's decision was based on fraud or a misrepresentation of evidence.

The Children's Division's argument, seeking to extend its investigation and decision-making indefinitely, adds "good cause" language to section 210.152 that does not exist. This Court will not interpret a statute as a party wishes it were written. *Turner*, 318 S.W.3d at 667. This Court will not add statutory language where it does not exist; this Court merely interprets the statutory language as written by the legislature. *Ryder Student Transp. Services, Inc. v. Dir. of Revenue, State of Mo.*, 896 S.W.2d 633, 635 (Mo. banc 1995). It is obvious the legislature knew how to grant the Children's Division an extension of the statutory time limitations because it did so in section 210.145 by inserting the "good cause" language and a procedure to follow when the investigation was not completed. The legislature reiterated its intent that no investigation should extend beyond ninety days by promulgating the notice to the alleged perpetrator, providing he or she will be notified of the Children's Division's decision within ninety days. Section 210.183. Finally, the legislature's subsequent statutory amendments to sections 210.145.14, RSMo Supp. 2007, and 210.152.3, RSMo Supp. 2011, further indicate the legislature's intent to limit the time of the Children's Division investigations in the normal course of its business. The legislature fully articulated a statutory scheme

16

to investigate and protect all Missouri's children in a prompt and efficient manner. *See Jamison*, 218 S.W.3d at 410.

## Conclusion

Accordingly, I believe the Children's Division's failure to operate within the enunciated statutory time frames divested it of the authority to take any other action in this case.[7]  I would affirm the trial court's judgment.

_____
GEORGE W. DRAPER III, JUDGE

---

[7]The principal opinion characterizes the outcome of this dissenting opinion as creating a sanction.  Yet, this legally sound and historically approved approach does no such thing.  Merely, the Children's Division is required to follow the legislative mandates, and its failure to do so divests it from further action; this is the result of the Children's Division's failure to comply with the statutes, not a court-created sanction.  To protect Missouri's children, the legislature has required diligence and only authorized the Children's Division to act during a statutorily created time period; its authority to act is limited to that granted to it by the legislature.  *State ex rel. Missouri Pub. Defender Comm'n*, 370 S.W.3d at 598; *In re C.W.,* 211 S.W.3d at 97.